# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CRIMINAL ACTION NO. 1:19-CV-00027-HBB

**MERCEDES GONZALEZ, individually,**
**and as ADMINISTRATRIX of**
**the ESTATE of GILBERTO GONZALEZ**                          **PLAINTIFF**

**VS.**

**POINT LOGISTICS, INC., et al.**                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Defendant Point Logistics, Inc. to limit the opinion of Plaintiff Mercedes Gonzalez's expert witness Joseph Stidham (DN 75). Defendant Patrick Jean-Louis has joined in the motion (DN 77). Gonzalez has responded in opposition (DN 83), and Point Logistics has replied (DN 85).

### Nature of the Case

On August 27, 2018, Gilberto Gonzales, the husband of Plaintiff Mercedes Gonzalez, was operating a tractor-trailer traveling on Interstate 65, a three-lane highway at the location in question. Defendant Patrick Jean-Louis was operating a tractor-trailer for Point Logistics. The front of Gilberto's truck collided with the rear of the Point Logistics trailer. Both drivers were able to bring their vehicles to a stop in the emergency lane, but after a few moments Gilberto's truck began to burn and he, tragically, died in the fire. The parties are in disagreement as to the facts surrounding the contact between the two vehicles. Gonzalez contends the collision happened when Jean-Louis pulled onto the highway from the shoulder. Point Logistics argues

that Gilberto was traveling in the center lane, Jean-Louis was traveling in the right lane, and Gilberto collided with the trailer when he drifted from his lane.

Point Logistics' Motion in Limine

Gonzalez retained Joseph Stidham as an expert in accident reconstruction. Stidham served as a Kentucky State Police Trooper for eight years, during which he performed accident investigations and received training in accident reconstruction. Since 1988, he has operated his own accident reconstruction and investigation agency. As a result of his investigation in this case, he concluded that the collision "occurred as Patrick Jean-Louis pulled from the north bound shoulder directly into the path of Gilberto Gonzalez who was traveling north bound on I-65 in the right hand (slow lane)" (DN 34-1, p. 2). The truck Jean-Louis was driving was equipped with a KeepTruckin GPS location monitoring system. The system provides coordinates for a vehicle's location by "pinging" a satellite. Communication with the satellite is periodic and not continuous and the coordinates are therefore referred to as "breadcrumb" coordinates (DN 83-12, p. 17). Stidham utilized the KeepTruckin GPS data, along with other information, in formulating his opinion as to the relative movement of the Point Logistics vehicle.

Point Logistics mounts a two-pronged attack on Stidham's opinions. First, Point Logistics contests whether Stidham has sufficient education and training in the field of GPS coordinates to qualify to offer an expert opinion. Second, Point Logistics challenges whether Stidham's reliance on the KeepTruckin breadcrumb GPS data constitutes a reliable basis for an expert opinion.

Turning first to Stidham's general expertise in the use of GPS data, Point Logistics directs attention to a question asked of Stidham on that issue, to which he responded "my education is very limited in that. It's things I've learned along the way as a reconstructionist and different

seminars and using coordinates" (DN 75-1, p. 3). He further testified that he sought the assistance of a colleague to answer questions related to the GPS data (Id. at p. 12-13). Turning next to his specific knowledge of the KeepTruckin breadcrumb GPS data, Point Logistics argues Stidham testified that he did not have any knowledge of the accuracy of the KeepTruckin software and essentially assumed its accuracy and took it at face value (Id. at p. 4-6). Point Logistics argues that what he knows about the system is what he learned during a telephone conversation with someone at KeepTruckin whose name he did not recall (Id. at p. 15).

Plaintiff's Response

Gonzalez's first point of opposition is that the motion is premature, in that it raises questions of the reliability of the KeepTruckin data, and, as such, should be addressed as an evidentiary foundational matter at trial. Gonzalez next argues that Stidham's reliance on the KeepTruckin GPS data is validated by the fact that the Kentucky State Police Trooper who investigated the accident also relied on it, and she characterizes both of Point Logistics' experts as having utilized the data as well. She asserts that she should be afforded an opportunity to affirmatively establish a foundation for the reliability of the KeepTruckin data at trial.

Gonzalez also argues that Stidham has sufficient education and training to offer an opinion that incorporates GPS data as part of the foundation. Gonzalez notes Stidham's prior career as an accident reconstructionist with the Kentucky State Police, his status as a certified accident reconstructionist and his experience in conducting over 1,500 accident investigations. She points to his CV as listing several educational programs relevant to the investigation and forensic analysis of motor vehicle accidents. Gonzalez also notes that Stidham testified that he previously owned and used a KeepTruckin device and was familiar with the device's operation. Finally, Gonzalez

states that, subsequent to the discovery deposition, Stidham obtained a KeepTruckin device and conducted testing to determine its accuracy.

## Point Logistics' Reply

Point Logistics disputes that its experts "confirmed" the reliability of the KeepTruckin data. To the contrary, it asserts its experts opined that the KeepTruckin data has a margin of error too great to permit pin-pointing the location of the vehicle on the roadway for accident reconstruction purposes. Further, Point Logistics contends that Stidham should not be permitted to adopt the opinions of another undisclosed expert and offer them to the jury under the guise of the expert's own opinion. Finally, Point Logistics argues that Stidham should not be permitted to use additional post-deposition investigation to bolster his opinion.

## Discussion

The admissibility of expert testimony is governed by Fed. R. Civ. P. 702. Under this Rule:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles of methods to the facts of the case.

Fed. R. Civ. P. 702. When a party challenges an opponent's expert witness, the Court is charged with assuming a "gatekeeping" role to ensure the relevance and reliability of the expert's

testimony. Daubert v. Merrell Dow Pharm., Inc. 509 U.S. 579, 597 (1993). Whether an expert is qualified to offer an opinion is a preliminary factual determination to be made by the district court. Kingsley Associates, Inc. v. Del-Met, Inc., 918 F.2d 1277, 1286 (6th Cir. 1990). The Court must also assess whether the testimony "both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597. The inquiry is to be flexible and focus on the "principles and methodology, not on the conclusions they generate." Id. at 594-95.

Here, Point Logistics has challenged Stidham's standing as an expert on two grounds. First, whether he has sufficient experience, training or education to testify as an expert on GPS location data. Second, whether he has sufficient expertise to testify that the KeepTruckin breadcrumb data is sufficiently reliable to permit a determination of the precise movement of a truck.

1. Expertise in GPS data

Point Logistics does not challenge the reliability of GPS data in general. Rather, it challenges whether Stidham has sufficient expertise in the utilization of GPS data in the course of conducting an accident reconstruction. In this regard, it focuses on Stidham's response to a question as to his training and education in the field of GPS data analysis:

> My education is very limited in that. It's things I've learned along the way as a reconstructionist and different seminars using coordinates. Jeremy's is much more detail as a Marine and working intelligence for the Marines and planning missions. He had about 1,800 hours training in making maps and doing the things that we did here, planning missions and missel launches for the Marine Corp and the U.S. Military. He and I worked on this together, hand in hand. And when we actually went back and tested the accuracy of the data that was collected within the data, it was -- the distances were about 11 feet apart. . . .

(DN 83-12 at p. 57: 10-22).

Point Logistics contends that "things I've learned along the way" is an insufficient basis on which to found expertise in a subject. However, "where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." Tamraz v. Lincoln Elec. Co., 620 F.3d 665, 672 (6th Cir. 2010). While his education may be limited, Stidham testified that he has learned about GPS data in the course of his work as a reconstructionist, of which he has conducted over one thousand, and in the course of attending seminars. "The Court considers a proposed expert's 'full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.'" Schall v. Suzuki Motor of Am., Inc. No. 4:14-CV-00074-JHM, 2020 U.S. Dist. LEXIS 41281, at *8-9 (W.D. Ky. Mar. 10, 2020) (*quoting* Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000)). Point Logistics also challenges Stidham's reliance upon the expertise of his colleague in GPS data, however "the drafters of the Federal Rules specifically contemplated that experts would rely on others with specialized knowledge." United States v. Stapleton, No. 12-11-ART-(1), (2), (4), 2013 U.S. Dist. LEXIS 160442, at *25 (E.D. Ky. Nov. 8, 2013) (*referencing* Fed. R. Evid. 703 advisory comm. note). In sum, the undersigned is persuaded that Stidham's extensive training and experience in accident reconstruction, in which GPS data is a frequent component, is sufficient to permit him to offer an expert opinion in this case which likewise utilizes GPS data.

2. Expertise in KeepTruckin "Breadcrumb" GPS Data

Point Logistics posits its next contention as follows: "The general accuracy of GPS data is not at issue in this case. Instead, the issue is whether Mr. Stidham's opinion that KeepTruckin breadcrumb coordinates are precise within the width of one interstate lane is admissible" (DN 75-1

at p. 13). Turning to Stidham's opinion, Point Logistics asserts that Stidham lacks independent expertise on GPS issues, relying rather on what he learned from others, including an unnamed source at KeepTruckin. Point Logistics catalogues a number of factual issues of which Stidham had no knowledge, such as the type of device used to track the truck, whether the software for the device had been updated and the margin of error for any GPS locating service. It contends that Stidham's opinion lacks the scientific exactitude to ensure that his opinion results from reliable principles and methods, as required by the Rule. At its heart Point Logistics' challenge goes to whether Stidham can demonstrate that the KeepTruckin breadcrumb data is a reliable means of determining the precise location of a vehicle. The parties thus dispute the accuracy of the breadcrumb data. *See* Rush Expert Report, DN 83-9 at p. 8 ("The precise lateral position of the Volvo throughout the sequence of longitudinal dynamic events cannot specifically determined given the KeepTruckin reported margin of error for GPS positions within 5 meters (16.4 feet) when the system has good signal."). "However, expert testimony will not be excluded simply because the parties allege a factual dispute. . . . The Supreme Court has stated that '[v]igorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Grayiel v. AIO Holdings, LLC, No. 3:15-CV-00821-CHB-LLK, 2019 U.S. Dist. LEXIS 97113, at *18 (W.D. Ky. Mar. 15, 2019) (*quoting* Daubert, 509 U.S. at 596)). The mere weakness in the factual basis of an expert witnesses' opinion bears on the weight of the evidence rather than its admissibility. Moross Ltd. P'ship v. Eckenstein Capital, Inc., 466 F.3d 508, 516 (6th Cir. 2006).

3. Stidham's Post-Deposition Field Investigation

Point Logistics' Reply (DN 85), raises an additional issue which must be addressed. Subsequent to his deposition, Stidham conducted additional investigation to verify the accuracy of the KeepTruckin breadcrumb data. His initial report, prepared on September 28, 2020 revealed his utilization of the breadcrumb data (DN 83-3). The deadline for Gonzalez's disclosure of expert witnesses and reports was November 16, 2020 (DN 38). When Point Logistics conducted his discovery deposition on December 15, 2020, he indicated that he had "a system that's going to be delivered here Friday and we're going to test it ourselves" (DN 83-12 at p. 63: 21-23). Gonzalez attached as an exhibit to her Response to the motion to compel a supplemental report by Stidham simply dated "May 2021" (DN 83-15). In this report, Stidham details his use of a KeepTruckin GPS system and his investigation of the accuracy of the location data. In addition to challenging the validity of the manner in which Stidham chose to test the system, Point Logistics argues that Gonzalez should not be permitted to utilize the report at trial, as it was not provided until after Point Logistics "conducted depositions, retained experts, and disclosed signed reports with effective rebuttals of Stidham's opinions" (DN 85 at p. 5).

Under Fed. R. Civ. P. 37(c)(1), a party who fails to provide information or identify a witness as required by Rule 26(a) or (e) is not allowed to use that information or witness to supply evidence at trial unless the failure was substantially justified. In Burke v. U-Haul Intl, this Court addressed a similar situation where an expert conducted additional testing six weeks after the deadline for expert disclosures. No. 3:03-CV32-H, 2006 U.S. Dist. LEXIS 105538, at *18 (W.D. Ky. Oct. 19, 2006). The Court concluded that the additional testing should be excluded because, even though the issue discussed in the report was not new to the case, the opinion was. Id. at

8

*18-23.  In Yoe v. Crescent Sock Co., No. 1:15-CV-3-SKL, 2017 U.S. Dist. LEXIS 227493, at*10 (E.D. Tenn. Oct. 4, 2017) (*quoting* Equal Employment Opportunity Comm'n v. Heartland Auto. Servs., Inc. No. 212CV02054STADV, 2013 U.S. Dist. LEXIS 203473, at *12 (W.D. Tenn. July 19, 2013)), the court noted "Rule 26(e) does not permit supplementation of an expert's report to remedy an inadequate or incomplete preparation or review by an expert in the first instance."

When Stidham gave his discovery deposition, it was clear that he had not yet completed his investigation and testing, as he noted he expected to receive the KeepTruckin device and test it.  His supplemental report does not address the motor vehicle collision which is the subject of this case.  Rather, his supplemental report is devoted solely to an evaluation of the accuracy of a KeepTruckin GPS device.  It is thus a supplementation of his report and does not represent a new opinion.  Nonetheless, no explanation is offered for why he did not prepare the report until five to six months after his deposition, when he apparently expected to be in receipt of the device within a few days.  The supplementation cannot be considered timely.  In Howe v. city of Akron, 801 F.3d 718, 748 (6th Cir. 2015), the Sixth Circuit set forth a five-factor test for assessing whether a late or omitted disclosure is substantially justified or harmless.  These factors are "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose evidence."  Id. (citations omitted).  Point Logistics did not raise this issue until it filed its Reply, and thus Gonzalez should be afforded an opportunity to respond.  For this reason, Gonzalez may file a sur-reply within 14 days of this Order limited to the issue of the supplemental expert report and whether it should be excluded.

**WHEREFORE**, Plaintiff may file a sur-reply within 14 days.

June 29, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies to:   Counsel of Record